Good morning. Your Honors, may it please the Court, my name is Peter O'Shearing. I'll be presenting the argument on behalf of the petitioner. It is our contention that this motion to reopen should be granted for further consideration of petitioner's claims for asylum, withholding of removal, and protection against the Convention of Torture before the trial court, based on the new evidence that was submitted in the motion to reopen. This Court has long held in Basin v. Gonzalez Can you keep your voice up? Yes, I will now. In Basin v. Gonzalez, this Court held that the facts presented in an affidavit supporting a motion to reopen must be accepted as true unless it is inherently unbelievable. So the statements that you submitted were unsworn. Well, that does not – I understand that, Your Honor, but that does not make them inherently unbelievable. No, the IJ didn't say they were inherently unbelievable. The IJ did not consider the – I'm sorry, the BIA didn't say they were inherently unbelievable. The BIA didn't make any determination as to whether they were inherently unbelievable. I think that is a term that they should have addressed and showed why they weren't inherently unbelievable. Well, they just said they weren't placing that much weight on them. Correct. They weren't giving them that much weight. Well, we believe that under Basin v. Gonzalez that they should have been given the weight. And as they say in their holding, they must be given weight. The facts in Basin actually – the petitioner in Basin actually submitted new evidence from events that occurred to the petitioner's family. What do you think the regulation means when it says that a motion to reopen should be supported by affidavits and I think it's other evidence? Well, as far as – I think the Board of Immigration Appeals just conclusively disregarded the evidence here. But it's not evidence. Without a note, it's not evidence, is it? Well, it is evidence. It was submitted. There were seven affidavits that were submitted. One was a medical record corroborating one of the – well, all of the affidavits that there had been gunshots and he suffered two gunshot wounds and was taken to the hospital. So that was also submitted into the evidence. Is there any – it's not clear from the record why the shots were fired, is it? Well, it's clear from the testimony based in the new evidence by the witnesses. All testify that on November 2nd, 2007, that there was an attack on the petitioner's family's store, looking for the petitioner and looking for also the petitioner's family members because of their allegiance with the opposition party and not getting the answers they wanted, they took shots into the store and hit the petitioner's nephew. The petitioner was taken to the hospital and suffered gunshot wounds. They – as far – it would be real difficult to expect that the hospital would do an investigation right then and there and say that he suffered gunshot wounds because government forces fired into his store. So I wouldn't expect to see that in a medical report. But the medical report in and of itself confirms the statements that were made by the seven witnesses. And we believe that that's new evidence, that that's material evidence that if considered by the immigration judge in a new case, coupled with the previous incidents of persecution, that it would go to prove the eligibility for asylum and withholding and protection against the convention – protection under the convention against torture. There was an adverse credibility finding here, wasn't there? Yes, there was in the previous. So how does that work into your – what do we do with that? Or what did the BIA do with that, I should say? Well, the BIA affirmed the immigration judge's ruling on a credibility issue. But, Your Honor, this is a – the events that occurred in – to the petitioner began in 1994. There was an attack in 1995, another attack on the petitioner in 1996. She moved to Moscow, tried to get asylum there, came back to – was forced to come back to Armenia. Again, she was attacked in 1997. In 1998, there was an attack in 2000. And in 2007, her family members were attacked. This is going back from 1994 all the way to 2007. And continuing on, it shows that her and her family members are being systematically targeted. And this new evidence would buttress that claim. And if considered along with the prior incidents of persecution, it could go to support her claim for eligibility for asylum. Okay. Would you like to save the room? I'd like to reserve. Thank you. Okay. May I hear from the government? May it please the Court, Elizabeth Kerlin on behalf of the United States Attorney General. Your Honor, the Board exercised its considerable discretion in denying petitioner's untimely motion to reopen because her witness statements were unsworn and she was previously found not credible. She failed to explain why her lengthy delay in filing the motion to reopen and her country conditions evidence does not establish material change circumstances in Armenia. Petitioner's argument is misplaced because the Board did not make a finding regarding whether the documents were inherently unbelievable. Although this Court has held that facts presented in an affidavit supporting a motion to reopen must be accepted as true unless inherently unbelievable, petitioner did not submit any affidavits in support of her claim. Her statement and the statement of her relatives were unsworn and not made under penalty of perjury. The Board, therefore, gave them very limited weight in light of the agency. So did the Board treat them as quote-unquote other evidence? It would appear that the Board... Yeah, sometimes it's got to be difficult sometimes for petitioners to get an affidavit or a declaration that is sworn under penalty of perjury of the laws of, I don't know, Armenia or Kazakhstan or whatever it might be. So it's not often easy for them to do that. So I gather that the Board sort of treats this as, well, it's some evidence but it's not very persuasive or we don't give much weight. Is that what's going on here? Yes, Your Honor. The Board is not looking at this evidence as affidavits. Right. And so, therefore, it's looking at it as other evidence. And in the Court's review of the Board's decision is in looking at whether the Board acted irrationally by looking at these unsworn statements and saying, well, there's been a prior adverse credibility and these unsworn statements, which you were able to obtain from all of your family members and three witnesses and you submitted, but yet you, for whatever reason, nobody is attesting to the truth in these statements. So, therefore, we have to look at what you're stating in these unsworn statements. We have to look at the administrative record that exists and the fact that there's been a prior adverse credibility determination, which this Court affirmed, and we have to determine, and this Court has to determine, was it rational for the Board to do that? Was it rational for the Board to say, we're going to give this limited weight? Because regardless of the fact that there's a medical document that indicates that the nephew was shot, there is no sworn statement that exists that makes the connection between the shooting and what you're alleging that was the cause of the shooting, which is that the agents, the government, was still looking for you based on your religious practices, which was the claim that was found incredible, and your participation in May 1999 opposition voting, which you never presented previously during your asylum claim, and there's no indication that there's any evidence linking the two or that the perpetrators of the shooting were government agents. Recognizing it's difficult to obtain affidavits sometimes, could the BIA simply say, we're not going to consider this at all because it's not under oath? The Board could have stated that, but it didn't. It chose to instead, it considered it because especially along with the other evidence, which is there's the medical report and there's country conditions information, so the Board considered all of that. I know that, but wouldn't it be more straightforward to say, look, this is not evidence. It's unsworn, it's a statement, it's interesting, but it's loose talk, it's not under oath, and some of the other things, documents, medical reports, are other evidence, but an unsworn statement is simply not evidence. Well, the Board could have chosen to do that, but it didn't in this case. It said that it would give... Wouldn't it be more honest to do that? I mean, granted, it would give an appellate issue, but isn't that the way courts are supposed to operate? I mean, it would seem to me they would. Frankly, I see, it seems to me an unsworn statement is not evidence, but that might be naive. Well, the thing is whether this Court would have handled that issue differently is different from the question that's before the Court, which is in reviewing the Board's decision, it's not whether substantial evidence supported what the Board decided, or even whether this Court would have done it differently, it's whether did the agency act irrationally when it stated that it would give limited weight in light of the prior adverse credibility determined, in light of all the other evidence that's in the administrative record, and that was before the Board. And the answer to that would be no, that the Board was not acting irrationally when it gave... that was necessary, and determined in the end that it would give limited weight to those unsworn statements, because they were not affidavits. What is the evidence of changed circumstances? The evidence that Petitioner submitted regarding changed conditions in Armenia were relating to a march, the political violence that occurred in the country after a March 2008 rally. What the Board did was when it looked at those country conditions information, it said that it wasn't evidence of changed circumstances relating to her material, that were material to her claim, because her claim is based on the fact that government, the government was still searching for her based on her prior, her religious practices, and, which were found incredible, and then in addition to that, in 1999, in May 1999, she alleges that she and her family, including all the individuals who submitted those affidavits, her niece-in-law, everybody, voted in parliamentary elections, and the government continued to look for them, bothered the family from May 1999 up through to the event in November of 2007. And so therefore, those country conditions information that she submitted about the March 2008 rally, the Board found they were unrelated to, they didn't indicate, or were not indicative, or did not shed any light on the claim that she's presenting in her motion to reopen, which is that she supported a political party that isn't even ever mentioned in any of those country conditions information. So in looking at all of that together, the Board decided that there was no evidence linking the shooting of the nephew, and that therefore she hadn't met her burden of establishing material change country circumstances. And so I'd like to also note that she does not challenge the Board's determination as well that if these events occurred in November of 2007, as she alleges, there's a question as to why she delayed for almost, for 18 months before filing her motion to reopen. She doesn't address that in her unsworn statement that she submitted. She also doesn't address the fact that there, although she's alleging this prior political persecution claim, she has also alleged that government agents continued to look for her because of her religious practices, which were found incredible. So those two claims, it's not an entirely new claim. It's a claim based on past facts and also on other facts that were found incredible and affirmed by this Court. So in closing, I'd just like to say that the Board did not abuse its discretion or act irrationally in denying her disfavored motion. to reopen because she's failed to demonstrate material change circumstances in Armenia. Okay. Thank you, Counsel. I think there was a few minutes for some rebuttal time. Well, as Your Honor has mentioned, it's very difficult to get documentary evidence and affidavits from countries like Armenia. I don't know that. I'm just, you know, I'm speculating. I have no idea. I can imagine that it might be difficult to get. Well, as far as the government's argument that it took 18 months for her to file a motion to reopen, that could have been time spent trying to gather this type of evidence, trying to figure out what had actually happened, trying to possibly obtain some sort of interview with her family members and gathering up that evidence. And that's why it may have taken her that amount of time to file the motion to reopen. She could have filed an affidavit to that effect. She could have. It wouldn't have been as strong as obtaining all the evidence from the family members, including the medical report as well. That definitely buttresses her argument for asylum. Why is it difficult, if you obtain a statement, not to include the phrase, I declare under the penalties of perjury, the following things? I mean, it's not that it's particularly formalized as to what an oath is in federal court or in federal practice. Yes, Your Honor, if I was representing Petitioner at that time, I would have definitely recommended those statements at the bottom of the declarations. However, I don't know what the... She was represented at the time. She was. I believe she was represented at the time she did make the motion to reopen. I don't know at the time she was... No interest. At the time she was gathering the evidence, she was. But that being said, we don't know what the system is in Armenia. We don't know what people in Armenia expect as far as sworn statements. It could possibly be that in Armenia it's just the standard to write a letter and that's without... That very well could be the case. I think had the BIA disregarded these statements entirely, you'd have a slightly better argument. You could argue that the statute requires consideration of not only sworn affidavits but also other evidentiary materials and the unsworn statements could fall in the category of other evidentiary materials. But here the BIA did give it some weight. It did give it some weight and I go back to the holding in Basin. Again, there's nothing that shows that this evidence is inherently unbelievable. So according to Basin, according to this court's precedent, the motion to reopen, the affidavits must be accepted as true. If they are accepted as true, then what's in them must be accepted as true. And I think they should have been given much greater weight than the BIA actually gave them, especially considering that there was a medical report from a hospital, an independent source outside of the family, that was corroborated by all this evidence. And this was a huge event, a shooting on the family business and the family store while many of their family members were present and one of their family members got shot. And I think that, coupled with all the evidence that was previously presented in this case, will allow the petitioner to establish her burden of proving eligibility for asylum and withholding. Okay. Thank you, counsel. We appreciate both arguments and the matter will be submitted at this time.
judges: Motz, Paez, Nguyen